# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | **NO. 3:08-cr-00205** |
| **v.** ) | |
| ) | **JUDGE CAMPBELL** |
| **CORWIN HARRIS** ) | |

## MEMORANDUM AND ORDER

Pending before the Court are Defendant's *pro se* Motion for Reduction-in-Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. No. 125); a Supplemental Motion for Compassion Release (Doc. No. 132), filed by counsel for Defendant; and the Government's Response to the Motions (Doc. No. 137). For the reasons set forth below, Defendant's Motions (Doc. Nos. 125, 132) are **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 8, 2009, Defendant pled guilty to drug trafficking charges, before former Judge Robert L. Echols, through a Plea Agreement with the Government. (Doc. Nos. 86, 87). More specifically, Defendant pled guilty to conspiracy to distribute, and possess with intent to distribute, five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count One), and attempted possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count Three). (*Id.*) Through the Plea Agreement, the parties agreed the recommended guideline range was 360 months to life (based on a total offense level of 38 and a criminal history category of VI). (Doc. No. 87 ¶ 10(c)). In addition, the Government agreed to dismiss another drug trafficking charge (Count Two) at sentencing. (*Id.* ¶ 3). At the subsequent sentencing hearing,

Judge Echols granted a variance and sentenced Defendant to 260 months of imprisonment. (Doc. Nos. 97, 98, 99).

Defendant's pending motions reference the COVID-19 coronavirus pandemic. The COVID-19 coronavirus pandemic has been declared a national public health emergency.[1] As of February 3, 2021, COVID-19 had killed more than 441,000 Americans and infected over 26 million.[2] The Centers for Disease Control and Prevention ("CDC") advises that individuals with certain underlying health conditions and older adults are at an increased risk for severe illness and death if they contract the virus.[3] The CDC defines "severe illness" as hospitalization, admission to the ICU, intubation or mechanical ventilation, or death.[4] According to the CDC, "[t]he best way to prevent illness is to avoid being exposed to the virus."[5]

## II. STANDARD OF REVIEW

In December 2018, Congress passed the First Step Act, Section 603 of which transformed the process for compassionate release under § 3582(c)(1)(A) to allow prisoners to directly petition

---

[1] *See Renewal of Determination that a Public Health Emergency Exists*, www.phe.gov/emergency/news/healthactions/phe/Pages/covid-19-2Oct2020.aspx (renewing, effective Jan. 21, 2021, determination that a nationwide public health emergency exists due to the COVID-19 pandemic and has existed since January 27, 2020) (last visited Feb. 3, 2021).

[2] *CDC, COVID Data Tracker*, http://covid.cdc.gov/covid-data-tracker (last visited on Feb. 3, 2021).

[3] CDC, *People Who Are at Increased Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Feb. 3, 2021).

[4] CDC, *Evidence Used to Update the List of Underlying Medical Conditions That Increase a Person's Risk of Severe Illness from COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last visited on Feb. 3, 2021).

[5] CDC, *How COVID-19 Spreads*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html. (last visited Feb. 3, 2021).

courts. Until this amendment, compassionate release motions could only be brought by the Director of the Bureau of Prisons, an option that was infrequently exercised.[6] The compassionate release statute now states in relevant part:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction…
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582(c)(1)(A).

The requirement that a prisoner exhaust administrative rights to appeal or wait 30 days after the first request to the prison is a mandatory claims-processing rule. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). In *Alam,* the Sixth Circuit considered the exhaustion requirement in the context of the unique circumstances presented by the COVID-19 pandemic and concluded that exhaustion "operates as an 'unyielding procedural requirement[]'" and is not subject to equitable exceptions. *Id*., at 834. If a prisoner fails to comply with the exhaustion

---

[6] The first year after passage of the First Step Act, 145 offenders were granted compassionate release under 18 U.S.C. § 3582(c)(1)(A), a five-fold increase from fiscal year 2018, during which 24 compassionate release motions were granted. *See* United States Sentencing Commission, The First Step Act of 2018: One Year of Implementation, 46-49 (Aug. 31, 2020); *United States v. Jones,* 980 F.3d 1098, 1101 n.1 & 1105 (6th Cir. 2020). Of the motions granted during the first year, 96 were filed by the offender. *Id*.

3

requirement, the *Alam* Court instructed that district courts should dismiss the prisoner's request for compassionate release without prejudice. *Id*.

Once the exhaustion requirement is satisfied, district courts in the Sixth Circuit are to evaluate the merits of a request for compassionate release by applying a three-step test. *United States v. Jones*, 980 F.3d 1098, 1105-08 (6th Cir. 2020).[7] "At step one, a court must 'find[]' whether 'extraordinary and compelling reasons warrant' a sentence reduction." *Id*., at 1107-08. Step two requires the court to "'find[]' whether 'such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission.'" *Id*., at 1108. At step three, the court must consider "any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

In *Jones*, the Sixth Circuit also addressed the issue of whether the district court, as part of step two, should have applied Sentencing Guideline Section 1B1.13 ("Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)"), which was promulgated in 2006. *Id.,* at 1108-11. The court pointed out that, since the First Step Act was enacted in 2018, the Sentencing Commission has not amended the policy statement and, as currently worded, the existing policy statement applies only to motions filed by the BOP. *Id*. Finding the existing policy statement "inapplicable" to cases filed by an imprisoned person, *Jones* instructs that in considering such a filing, a court may "skip" step two of the inquiry and has "full discretion to define

---

[7] The Government argues *Jones* was wrongly decided.

'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.*, at 1111; *see also United States v. Navarro,* ___ F.3d ___, 2021 WL 287756 (6th Cir. Jan. 28, 2021).

### III. ANALYSIS

As an initial matter, the Court concludes that Defendant has met the exhaustion requirement of Section 3582(c)(1)(A). Defendant has attached his request to the Warden of the facility where he is housed, dated May 14, 2020, requesting compassionate release (Doc. No. 125), and the Government does not contest that he has exhausted administrative remedies. (Doc. No. 137, at 6).

Through his filings, Defendant presents the following basis for his request for compassionate release. Defendant is 45 years old and is currently housed at Forrest City Low FCC in Arkansas. He has served approximately 60% of his 260-month sentence, and his projected release date is April 28, 2027. Defendant states that, while he does not suffer from chronic conditions that increase his risk for severe illness if he contracts COVID-19, the facility where he is being housed has had a severe outbreak. Defendant also points out that the risk of transmission among the inmate population is extremely high. Compassionate release is also warranted, Defendant contends, because, if sentenced today, he would face a lower sentence – a mandatory minimum of only 10 years instead of 20 – given the changes brought about by the First Step Act. According to Defendant, these factors constitute "extraordinary and compelling reasons" for the Court to grant compassionate release.

The Government argues release is not warranted because the BOP has made great efforts to maintain the safety of inmates during the pandemic, and Defendant has not identified any underlying risk factors. The Government also argues that, even if Defendant's guideline range is

5

somewhat lower today (324-405), his 260-month sentence is still significantly lower than that range. Thus, the Government contends, these factors do not constitute "extraordinary and compelling reasons" for a sentence reduction.

For purposes of Defendant's request, the Court will assume he has demonstrated "extraordinary and compelling reasons" for compassionate release. As instructed by *Jones,* therefore, the Court will proceed to step three – consideration of the Section 3553(a) factors to determine if release is appropriate.

Section 3553(a) requires the Court to "impose a sentence sufficient, but not greater than necessary" to comply with a number of factors including: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; the applicable Sentencing Guidelines range; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

Defendant argues these sentencing factors support release because he has served a substantial portion of his sentence; if sentenced today, he would be subject to a 10-year mandatory minimum instead of a 20-year mandatory minimum; his criminal history relates primarily to his use of illegal narcotics; he has participated in programs, while incarcerated, that will help him find work when released; he is unlikely to reoffend given his age; and he has plans to live with his sister and attend technical school upon release.

6

The Government argues Defendant should serve the remaining 40% of his sentence based on the need to protect the public from further crimes, and the need for deterrence. The Government points out the serious nature of the offenses of conviction, and that Defendant has an extensive criminal history, including numerous instances of probation violations.

*Nature and Circumstances of the Offense*. According to the "Factual Basis" section of the Plea Agreement describing the offenses of conviction, Defendant distributed over 50 kilograms of cocaine he obtained from a source in Texas. (Doc. No. 87). Defendant also possessed firearms, including a 9mm pistol and an AK-47 type weapon. (*Id.*) When Defendant was apprehended during an undercover cocaine buy, the police seized $99,966.00 from him, as well as 20 pounds of marijuana. (*Id.*)

*History and Characteristics of the Defendant*. Defendant is 45 years old. He reported, through the PSR, that he had a relatively stable childhood, and that he had obtained a GED. The PSR also indicates a history of drug abuse, which was the primary basis for Judge Echols' decision to sentence Defendant below the applicable guideline range. (Doc. No. 99-1, at 17).

According to the PSR, Defendant has an extensive criminal history that extends over most of his adult life. Defendant's convictions primarily involve illegal drugs, but they also include a conviction for domestic assault and weapons charges. Although Defendant received a probation sentence on several convictions, he violated the terms of probation on multiple occasions. Defendant qualified for the highest criminal history category – Criminal History Category VI (13 or more points) – with 23 criminal history points. He was also determined to be a Career Offender based on his prior convictions for drug trafficking.

7

*Sentencing Guideline Range*. With a total offense level of 38 and a Criminal History Category of VI, the applicable Sentencing Guideline range was 360 months to life. As noted above, however, Judge Echols granted a substantial variance to 260 months. Even if the applicable mandatory minimum sentence for Defendant's offenses has changed, he has not shown that, if sentenced today, he would be subject to a guideline range lower than 260 months. And Defendant has not presented a basis for a variance greater than that already granted by Judge Echols.

Given the very serious nature of Defendant's offenses of conviction, and the substantial reduction from the applicable guideline range he has already received as part of his sentence, and having considered all the factors listed in Section 3553(a), the Court concludes that a sentence of "time-served" – in this case, approximately 60% of the 260-month sentence – is not sufficient. A time-served sentence would undermine the need for the sentence imposed to reflect the seriousness of the offense, the need to protect the public, the need to promote respect for the law, and the need to afford adequate deterrence. Accordingly, Defendant's Motions (Doc. Nos. 125, 132) seeking compassionate release are **DENIED**.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE